# KINSELLA, ET AL. v. FARMERS' LUMBER CO., ET AL.

(No. 1378; February 15, 1928; 264 Pac. 87)

14

*A. C. Allen,* for appellants.

*Brome & Brome,* for respondents.

RINER, Justice.

This was a suit brought by Anabella Kinsella and others, as plaintiffs, against Farmers Lumber Company, a corporation, and Hans Berlin, as defendants, to obtain an injunction restraining the defendants and their agents from interfering with or obstructing a portion of First Street in Berlin's First Addition to the town of Riverton, Wyoming. From a judgment dismissing plaintiffs' petition, the cause has been brought to this court by direct appeal for review. For the sake of convenience, the appellants, being the plaintiffs below, will be hereinafter referred to as the plaintiffs, and the defendants below, being respondents here, will be hereinafter referred to as defendants.

Plaintiff's petition alleges in substance, that they are residents and taxpayers of the town of Riverton, Fremont County, Wyoming, and that the defendant, Farmers Lumber Company, is a corporation incorporated under the laws of this state, with its principal offices at Riverton—the defendant, Hans Berlin, being also a resident of Riverton. It is also alleged that the defendant Berlin, being the owner of certain property, on June 12, 1915, subdi-

vided the same into lots and blocks, streets and alleys, and designated the plat, which delineated these subdivisions, "Berlin's First and Second Additions to Riverton;" that Berlin immediately thereafter sold lots therein to the plaintiffs and to other persons, the sales being made and located in accordance with the description in said plat; that the dedication of the streets therein was made by Berlin for the use of the public and the persons acquiring lots in said addition prior to June 1, 1915, and that the public and plaintiffs accepted the dedication of said streets and alleys as described in the plat by continued use thereof; that plaintiffs and other persons have improved the lots and blocks located in the addition and have become residents in said addition; that the town of Riverton, by its officers, took possession of these streets and has graded and improved them, and all of said streets have been under the charge and supervision of said town, being used by the plaintiffs and the general public as a part of the street-system of the town of Riverton; that the plaintiffs who became owners of the said lots, became vested with an interest in and right to the dedicated streets and alleys, and that neither the town of Riverton, nor any of its citizens or any of the plaintiffs, have ever waived their right to the use and maintenance of said streets and alleys; that the defendant, Farmers Lumber Company, is the owner of property in Block 1 in said addition, which property abuts on First Street; that the defendants, on September 16, 1924 and on other days, over the protest of the plaintiffs, wrongfully entered upon the portion of First Street between Block 22 of the original town of Riverton and Block 1 of said addition, and dug post holes, set posts, and attempted to erect buildings thereon, declaring their intention to use said portion of First Street for their private use and to close up that portion of said street, and deprive plaintiffs and the public of the use thereof; that if defendants are allowed to do so,

all of the property located and platted as said addition will be greatly damaged—said damages not being capable of being estimated in money, and that plaintiffs are without remedy at law; that plaintiffs, Anabella Kinsella, H. B. Hughes and other residents living in said addition are owners of lots facing on said First Street; that if defendants are allowed to proceed with their work in obstructing said street at the northerly end thereof, ingress and egress to said First Street will be denied to plaintiffs; that said First Street has been a direct means of travel for plaintiffs and the public to the C. & N. W. Railway depot and freight house and to Main Street of the town of Riverton; that the entire subdivision will be less desirable as residence property because of the detours made necessary around other lots and blocks to destinations in the northerly direction therefrom. The prayer of the petition is for an injunction restraining the defendants from interfering with any portion of First Street or obstructing the same, and that they be required to remove all obstructions placed by them in said street.

The petition was supported by affidavits, and a temporary restraining order was issued by the District Court Commissioner, operative upon condition that bond be filed in the sum of $500.

The separate answer of the defendant Farmers Lumber Company, after admitting its corporate existence and the original ownership of the defendant Berlin of the property platted, denied that Berlin at any time dedicated any portion of the premises in controversy to the use of the public in any manner whatsoever. The answer also admits that the plat of the land was filed in the office of the County Clerk of Fremont County, Wyoming, but denies that any portion of the land involved here appeared upon the plat as a part of any street or alley in Berlin's Addition to the town of Riverton; that it appears upon the face of said plat that no portion of the land so claimed was included

within the boundaries of any street or alley in said addition. It admits that plaintiffs are and for some time had been occupying lots in said addition other than the premises in controversy here, and avers that this defendant purchased of its co-defendant Hans Berlin and his wife certain real estate, including the property in dispute, for $7500; that said purchase was made without knowledge on the part of the defendants of any right or interest on the part of the plaintiffs or the public to occupy or use any portion of these premises as a street or alley, and without knowledge of any dedication thereof to the public use in any manner or form; that at the time of sale, Berlin, for the purpose of inducing said defendant to purchase said property, represented to this defendant's officers who negotiated the purchase, that no portion of the premises purchased by this defendant had been dedicated to public use and that he had good right to sell the same; that an examination of the record respecting the title to the premises, made by defendant's agents, showed that the plat aforesaid on file in the County Clerk's office of Fremont County was marked "vacated" as to the portions of said premises claimed by plaintiffs to be included within the streets of said town of Riverton; that on the faith of these representations, this defendant purchased the property and erected improvements thereon at a cost of $7724.20; that since the purchase said defendant has been in full possession of the premises and every part thereof, using the same for its business purposes.

The separate answer of Hans Berlin amounts in effect to a general denial of the matter set up in the petition. Plaintiffs filed a reply denying the allegations of new matter contained in the answer of the Farmers Lumber Company. The cause came on for trial before the court without a jury, with the result that the issues were found generally in favor of the defendants and against the plaintiffs, the temporary restraining order previously entered

was dissolved and plaintiffs' petition was dismissed. Due exception was taken to this judgment and subsequently the necessary steps were taken to bring the cause here.

The evidence offered on the trial shows the following facts: That during the first part of June, 1915, the defendant Hans Berlin was the owner of certain property adjacent to the town of Riverton in Fremont County, Wyoming, and at that time had this property subdivided into lots and blocks, streets and alleys. A plat was made of the property as thus divided, which was designated "Berlin's First Addition to the Town of Riverton." This plat was filed in the office of the County Clerk of Fremont County, Wyoming, on July 8, 1915. With reference to the premises in question here, the condition of the plat is as shown by the following outline map:

The open space shown on the map, to the east of Block 2 of the addition, is First Street. The open space immediately north of said block is Adams Street. That portion of the map marked "vacated" and north of the intersection of Adams and First Street designates the disputed property. The word "vacated" had been already written across that particular part of the plat when it was filed in the office of the County Clerk of Fremont County. H. B. Hughes, one of the plaintiffs, purchased Lots 11 and 12 in Block 2 through Earl Warren, apparently the agent of Berlin, though the extent and nature of such agency does not appear. This purchase was made in April, 1915. Hughes testified that at the time he made the purchase, he received a plat of the addition, concerning which the engineer, who surveyed it, said on the witness stand that it was an enlarged plat of the original survey made by someone in his office. The plat received by Hughes does not appear to be an exact copy of the plat as finally filed in the County Clerk's office at Lander. The lettering and lining thereon is quite different and does not show the words "vacated" which appear on the filed plat. It appears that Hughes did not receive a deed in April, 1915, but he testifies that this enlarged form of plat was given him then—he having arranged to buy the property "on payments." Just when a deed was given him does not appear.

One Frank Woodson purchased Lots 7, 8 and 9 in Block 4 of the addition on June 25, 1915, but received no plat. Hughes and Woodson appear to be all of the plaintiffs who acquired property in the addition prior to the filing of the plat in the County Clerk's office at Lander. When Woodson made his purchase, no one was living on the addition. The defendant Farmers Lumber Company received a deed from Berlin, under date of the 14th of November, 1919, which was recorded January 23, 1920. This deed purported to convey "all that part of Berlin's First Addition to

the town of Riverton, Fremont County, lying north of Adams Street—the same being all of the fractional Block 1, and including the alley in said block and including that part of First Street lying north of Adams Street and south of the W. & N. W. R. R. holdings.'' On July 6, 1916, the town of Riverton adopted a resolution annexing the property included in Berlin's First Addition, and the plat, as recorded in the office of the County Clerk of Fremont County, was approved and adopted as ''correctly showing the boundaries of the tract annexed,'' and as ''dispensing with the filing of further plats thereof.'' The town of Riverton did not undertake to grade First Street in said addition until about 1917 or 1918. The testimony concerning the use by the public of the premises in controversy as a street is in conflict—some of the witnesses stating that it was regularly used, others stating that the place was impassable on account of being low, boggy and subject to general overflow from higher ground and from an adjacent irrigation ditch.

The contention of the plaintiffs seems to be that the premises in dispute were dedicated to public use and that the rights of the public therein have been established by years of user.

From an inspection of the recorded plat it is apparent that Berlin endeavored to comply with the provisions of chapter 137, W. C. S. 1920, in bringing his addition into the town of Riverton. That chapter provides the statutory machinery whereby a property owner shall lay out an addition to a town or city. In this case the certificate attached to the recorded plat and signed and sworn to by Berlin, complies with the provisions of Section 2136 of the chapter last mentioned, using the exact language prescribed by that section. Section 2137 of the same chapter declares that:

''The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets or other public use, or is thereon dedicated to charitable or other religious purposes.''

Even if it be contended that the two sales of lots made before the plat certified by Berlin was recorded, invokes the rule that where the owner of real property makes a plat thereof and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, he thereby dedicates the streets and alleys to the use of the public, that rule could not be invoked here, as there is no evidence in the record that Berlin, the owner, either knew of, approved or recognized, the enlarged plat, which did not contain all of the data included in the recorded plat. Neither does it appear in the record that Warren—through whom apparently the sales were made—had authority to deliver such a plat to any purchaser. Whether this rule, in any event, could be invoked, in view of the provisions of chapter 137 already mentioned—a point not necessary to be decided here—it is clear that this case must turn upon the effect to be given the plat filed for record. The rules of construction of such instruments are quite well established. In McCoy v. Thompson, 84 Ore. 141, 164 Pac. 589, it is said:

"The intent of the dedicator is the foundation and life of all dedications, and the intent must be clearly manifested. Where the dedication is statutory in character, the plat and writing generally furnish the means by which to ascertain the intent, and these, like all other writings, must be construed by the terms contained in them."

In Milliken, et al. v. Smith, 120 Okla. 211, 251 Pac. 84, the following language was used:

"Where a party files a plat of certain lots, blocks, streets, and alleys, the intention of the owner in making the plat is to be ascertained from all the marks and lines appearing thereon, and, if possible, such an interpretation should be followed as will give effect to all the lines and statements."

In Melin v. Community etc. School District, 312 Ill. 376, 144 N. E. 13, it is remarked:

"A dedication may be made by a survey and a plat alone. Guttery v. Glenn, 201 Ill. 275, 66 N. E. 305. The words on the plat indicate the intention of the dedicators. City of Jacksonville v. Jacksonville Railway Co., 67 Ill. 540."

And in City v. Huffman, 262 Mo. 367, 171 S. W. 323, the court said this:

"In construing plats of this character, we must give effect to the plain meaning and intent they exhibit by their outlines as well as by their words. St. Louis v. Railway, 114 Mo. 13, 23, 21 S. W. 202; Buschmann v. St. Louis, 121 Mo. 523, 536, 26 S. W. 687."

As the intention of the owner of the property is the thing to be ascertained, that intention must, as the authorities indicate, be deduced, in large measure, by what appears upon the face of the recorded plat. An examination of that shows that that portion of it delineating the premises in controversy, has inscribed upon it the word "vacated." Also the portion of the plat between the northerly and southerly portion of the fractional block purchased by defendant, which would ordinarily be regarded on the map as an open alley, has the word "vacated" inscribed thereon. No question appears to be made in the case at bar, nor ever has been made by anyone, so far as appears here, that that particular part of the premises covered by the plat never became public property.

The only question here is concerning the claimed existence of First Street in that portion of the plat marked "vacated," and north of the intersection of Adams and First Street. As we have already seen, the plat was filed for record in this condition. The Century Dictionary defines the verb "vacate" as: "To annul; make void; make of no authority or validity." The Standard Dictionary defines the same word as: "To set aside; annul; declare void." In McCarl v. Clarke, 167 Iowa 14, 148 N. W. 1015, it is said: "A definition for the word 'vacate' is to put an end to." If the recorded plat had borne only the same let-

tering and markings as the plat originally prepared by the surveyor—an enlarged copy of which was placed in the hands of Hughes—there could be no doubt that the premises in controversy, and that part of the property conveyed to the defendant Farmers Lumber Company and apparently designated as an alley, would be dedicated to public use. But the owner, before he allowed the plat to be recorded with his certificate certifying it to be "in accordance with" his "desires," as the law required, caused the words "vacated" to be inserted, as shown on the recorded plat. Clearly his intention was, so far as it can be gleaned from the language used on the plat, to annul and put an end to any existence of First Street north of its intersection with Adams Street, or the existence of the alley between the northerly and southerly parts of the property purchased by defendant. Certainly the use of the words "vacated" in two places on the plat could hardly be construed to constitute a dedication thereof.

In Morris v. Avondale Heights Company, 218 Ky. 356, 291 S. W. 752, the court construed the effect of the use of the word "reserve" on a plat, and said:

"It is not seriously contended, nor are we disposed to hold, that the words 'Reserve' on the plat operated as a dedication of the tract so marked. The use of the words 'Heights Park' shows a clear understanding of what words were necessary to effect a dedication for park purposes, and the fact that the word 'Park' was not used in connection with the tracts in question, but only the word 'Reserve' was employed, must be construed as indicating a different purpose with respect to those tracts. H. A. & L. D. Holland Co. v. Northern Pacific R. Co. (D. C.) 208 F. 598; Cleveland v. Bergen Bldg., etc., Co. (N. J. Ch.) 55 A. 117; Patterson v. People's Natural Gas Co., 172 Pa. 554, 33 A. 575."

So in the case at bar, the words "vacated" appear nowhere else on the plat and should be construed as indicating a purpose, with reference to the premises delineated upon which they appear, different from those parts of the plat

where they do not. Further, as noted in the quoted authorities, supra, effect must be given to the *lines* of the plat, as well as to its language. Recurring to it we find that, as recorded, the premises in controversy are cut off from the remaining portion of First Street by a *solid line*. We would be obliged to disregard this, as well as the words upon the plat, in order to reach a conclusion that the owner intended to dedicate the property in controversy. This we cannot do.

The act of the owner of the property, in deeding the premises in controversy to the defendant Farmers Lumber Company, in November, 1919, before any question had been raised concerning the rights of the public to the property involved here, is in entire harmony with his intention as expressed upon the recorded plat. The town of Riverton itself accepted the plat, by formal resolution, as it was recorded. It could hardly claim any rights in the property in controversy after so doing. The finding of the trial court on the question of user of the disputed property by the public—were we to assume that that was pertinent here —would, under familiar principles governing consideration of conflicting testimony by an appellate court, be conclusive against the plaintiffs.

A full and careful consideration of the record before us convinces us that the judgment of the trial court was clearly right and it should be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.