**Keith SARE, Appellant (Defendant),**

v.

**SHERIDAN COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee (Plaintiff).**

**No. 89–162.**

Supreme Court of Wyoming.

Dec. 19, 1989.

Micheal K. Shoumaker, Sheridan, for appellant.

Matthew F. Redle, Sheridan County Atty., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellee Sheridan County Board of County Commissioners filed an action against Appellant Keith Sare, seeking to enjoin him from maintaining fences, gates, and a leach field on a street dedicated to Sheridan County. The district court granted a summary judgment in favor of the Board of County Commissioners.

We affirm.

Sare presents the following issue for our review:

> 1. Can Keith Sare maintain gates across the right of way for Lodore Avenue to exclude the general public until Sheridan Coun[ ]ty decides to construct, maintain and use Lodore Avenue?

The record in this case reveals that on December 15, 1988, the Board of County Commissioners filed a complaint with the district court, alleging that Louvina Smith platted a subdivision in Sheridan County, which the Board of County Commissioners approved and established on September 1, 1936. The Board of County Commissioners asserted that the subdivision contained streets which Smith dedicated for public use and that Sare, without authority, constructed and maintained fences, gates, and a leach field on a dedicated street named Lodore Avenue. The complaint further alleged that Sare's gates and fences ob-

structed public access on the street, and it sought temporary and permanent injunctive relief for removal of the obstructions.

Sare admitted that Smith dedicated the street for public use. He asserted, however, that the Board of County Commissioners had orally granted his father, Sare's predecessor in interest, permission to construct a gate across the street and that the Board of County Commissioners was estopped from claiming relief for Sare's use because: (1) the road had not been used by the public and would not be used by the public in the future; (2) the Board of County Commissioners had not constructed or maintained the road in the past and refused to maintain it in the future; (3) Sare and his father maintained the road for thirty years; and (4) Sheridan County has vacated other roads in the immediate area. Sare also stated in an affidavit that his father constructed the road which exists on the street; that, after Sare's requests, the county road superintendent refused to remove snow off the street; and that his leach field was not located on the street.

In addition, the affidavits provided by the parties and the answers to Sare's request for admissions reveal the following facts. Lodore Avenue serves as a boundary between Sare's property and Jack and Annabelle Moody's property. Sometime in 1988, Sare fenced off a gate in the fence separating the Moodys' property and Lodore Avenue. The Moodys have also been prevented from using the street to enter their property because Sare placed gates on the street, which he occasionally padlocked. The Board of County Commissioners stated that it has no plans to complete construction of Lodore Avenue and that it will not maintain the street except when necessary to reduce an imminent and immediate threat of life or property.

Both parties moved for a summary judgment. On June 7, 1989, the district court found that Sare had moved a fence which previously existed between the street and the Moodys' property and ordered:

(1) * * * If the fence line as now constructed is on the boundary line between the Moody property and County right-of-way, it may remain provided that the Defendant build into the fence a gate located between the right-of-way and the Moody property in the same location it was in the fence before it was reconstructed. In the event the existing fence is not upon the correct boundary line between the Moody property and the right-of-way line, then the Defendant will be required to reconstruct the fence on the correct boundary line again providing for a gate between the right-of-way and the Moody property in the same location, or approximately the same location, as it was in the previously existing fence.

(2) Mr. Sare will be enjoined and restrained from placing any gates or obstructions in the right-of-way provided that the County agrees with Mr. Sare to pay one half (½) of the cost of constructing a fence between the Sare property and the County right-of-way. Until such time as the County agrees to pay half of the costs of constructing such fence, then the Sares can continue to maintain the fences and gates as they presently exist on the right-of-way provided that such gates cannot be locked and such gates must be maintain[ed] in such a manner that the public can easily open and close said gates and gain access back and forth along the dedicated and existing right-of-way.

This appeal followed.

We have articulated the standard of review for a summary judgment many times. *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School District Number One*, 763 P.2d 843 (Wyo.1988); *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174 (Wyo.1988). In *Jones Land and Livestock Co. v. Federal Land Bank of Omaha*, 733 P.2d 258, 263 (Wyo.1987), we stated:

[T]he burden is on the moving party to demonstrate that there is no genuine issue of material fact before a motion for summary judgment should be granted. However, once the movant has established a prima facie case, the burden then shifts to the opposing party to come

forward with competent evidence of specific facts countering the facts presented by the movant. General allegations and conclusory statements are not sufficient. (Citation omitted.) *See also Pace v. Hadley,* 742 P.2d 1283 (Wyo.1987).

The parties do not dispute that Smith dedicated the street for public use when she filed a plat for a subdivision.[1] A dedication is defined as

"the devotion of property to a public use by an unequivocal act of the owner, manifesting an intention that it shall be accepted and used presently or in the future. The intention of the owner to dedicate and acceptance thereof by the public are the essential elements of a complete dedication. Thus it is vital to a dedication of property to public use that *it is to be forever and irrevocable after acceptance, and that it be for a public use.*"

*City of Evanston v. Robinson,* 702 P.2d 1283, 1286 (Wyo.1985) (emphasis added) (quoting 11 E. McQuillin, *The Law of Municipal Corporations* § 33.02 at 636 (3d ed. 1983)). This Court has established the principle that, once a road becomes a public road, the public has a vested right to use it, and it "cannot be vacated [or abandoned] without compliance with the appropriate statutes." *Sheridan County v. Spiro,* 697 P.2d 290, 303 (Wyo.1985). *See also Board of County Commissioners, Carbon County v. White,* 547 P.2d 1195 (Wyo.1976).[2] There is nothing in the record indicating that Lodore Avenue was vacated.

Irrespective of the validity of Smith's dedication, Sare contends that the Board of County Commissioners should be estopped from protesting about his gates and fences because the Board of County Commissioners granted his father permission to build a gate and because the Board of County Commissioners has failed to construct or maintain the street. While this Court has stated that the doctrine of equitable estoppel applies to municipal corporations, *Rohrbaugh v. Mokler,* 26 Wyo. 514, 188 P. 448 (1920), we recently said:

Equitable estoppel should not be invoked against a government or public agency functioning in its governmental capacity, except in rare and unusual circumstances and may not be invoked where it would serve to defeat the effective operation of a policy adopted to protect the public.

*Big Piney Oil & Gas Company v. Wyoming Oil and Gas Conservation Commission,* 715 P.2d 557, 560 (Wyo.1986).

Sare has failed to set forth any rare and unusual circumstances in his materials opposing the Board of County Commissioners' motion for summary judgment which would invoke the application of estoppel. There being no genuine issue of material fact, the Board of County Commissioners is entitled to summary judgment as a matter of law.

Affirmed.

URBIGKIT, Justice, dissenting.

Although not realistically addressed by the litigants and consequently not considered by the majority as a dispositive issue, I would reverse and dismiss the original complaint for failure to state a claim pursuant to W.R.C.P. 12(b)(6) and 12(h)(2). This is a case of first impression for Wyoming where the Sheridan County Board of County Commissioners undertook litigative responsibility for access on an undeveloped platted street in a rural subdivision after a contest between adjoining landowners developed. *Cf. Ruby Drilling Co., Inc. v. Billingsly,* 660 P.2d 377 (Wyo.1983); *Thomas v. Jultak,* 68 Wyo. 198, 231 P.2d 974 (1951); *Kinsella v. Farmers' Lumber Co.,* 38 Wyo. 13, 264 P. 87 (1928); *Ashford v. Walters,* 160 Ga. 350, 127 S.E. 758 (1925); and *Hougland v. Perdue,* 361

---

1. Wyo.Stat. § 34–12–104 (1977) provides:

The acknowledgment and recording of such plat, is equivalent to a deed in fee simple of such portion of the premises platted as is on such plat set apart for streets, or other public use, or is thereon dedicated to charitable, religious or educational purposes.

The 1936 version of § 34–12–104 is the same as the current statute. Wyo.Rev.Stat. § 116–203 (1931).

2. Wyo.Stat. §§ 34–12–106 to –109 and 24–3–101 to –127 (1977) provide for vacation of plats, streets, alleys, and highways.

S.W.2d 291 (Ky.1962).[1] This is not a case where a general public use exists and the governmental agency acts to restrain interference, *Blair v. Archer County*, 192 S.W.2d 573 (Tex.Civ.App.), *rev'd on other grounds*, 145 Tex. 102, 195 S.W.2d 348 (1946), nor is this a case where the county seeks a remedy to provide a present public use, *Douglas County v. Umpqua Valley Grange, Inc.*, 45 Or.App. 739, 609 P.2d 415 (1980); *Town of Basic City v. Bell*, 114 Va. 157, 76 S.E. 336 (1912).

I cannot find any basis for either Sheridan County directly or acting through the membership of the Board of County Commissioners to become involved as a real party in interest to litigate access rights within an undeveloped rural subdivision where the platted street is neither developed nor has past or future responsibility for development and public utilization to be assumed by the Sheridan County Board of County Commissioners. Dedication of the subdivision roadway for public use neither vests fee title in the Sheridan County Board of County Commissioners nor responsibility and right for control unless obligation for development, maintenance and control is undertaken as a public roadway or county highway.[2] 1 B. Elliott & W.

1. The author of 2 B. Elliott & W. Elliott, *Law of Roads and Streets* § 1175 at 1673 (4th ed. 1926) (footnote omitted) states:

> It may well be that some private use of the way may be permitted without impairing the rights of the public or of abutting owners, and where it is reasonable to infer that the public and the abutters have not surrendered their rights, it can not be justly assumed that the way has been abandoned, although the private use of it may be very considerable. It is to be remembered, too, that the rights of the public are seldom guarded with the vigilant care with which owners of private property guard their own rights, and acts or omissions which might weigh heavily against individual owners can not always be assigned much force against the public. There is, therefore, a clear and valid reason for discriminating between public and private rights.

*See Parker v. City of St. Paul*, 47 Minn. 317, 50 N.W. 247 (1891) and *Emanuelson v. Gibbs*, 49 N.C.App. 417, 271 S.E.2d 557 (1980).

2. Something less than a complete "pictorial jigsaw puzzle," *Town of Moorcroft v. Lang*, 779 P.2d 1180, 1188 (Wyo.1989) (Thomas, J., dissenting), is provided by Wyoming law in defining the title effect of road and street dedications. The results seem eschewed in designation applied whether directed to private usage, *Ruby Drilling Co., Inc.*, 660 P.2d 377, *Jultak*, 231 P.2d 974; *Tissino v. Mavrakis*, 67 Wyo. 560, 228 P.2d 106 (1951); *Kinsella*, 264 P. 87; public responsibility, *Koontz v. Town of Superior*, 746 P.2d 1264 (Wyo.1987); *George W. Condon Co. v. Board of County Com'rs, Natrona County*, 56 Wyo. 38, 103 P.2d 401 (1940); rejecting public access, *Gregory v. Sanders*, 635 P.2d 795 (Wyo. 1981); vacation and resale, *Payne v. City of Laramie*, 398 P.2d 557 (Wyo.1965); *Gay Johnson's Wyoming Automotive Service Co. v. City of Cheyenne*, 367 P.2d 787 (1961), *reh'g denied* 369 P.2d 863 (Wyo.1962); *Smith v. Duke*, 257 Ala. 86, 57 So.2d 550 (1952); or mineral rights development, *Town of Moorcroft v. Lang*, 761 P.2d 96 (1988), *reh'g granted* 779 P.2d 1180 (Wyo.1989);

*City of Evanston v. Robinson*, 702 P.2d 1283 (Wyo.1985).

If something can be derived which is right-side up within the terminology of Justice Thomas, it is the *Payne* rule in *Gay Johnson's Wyoming Automotive Service Co.*, 367 P.2d 787 which was retained in *Morad v. Brown*, 549 P.2d 312 (Wyo.1976) and sustained in *Ruby Drilling Co., Inc.*, 660 P.2d at 379–80 (footnote omitted):

> In *Tissino v. Mavrakis*, 67 Wyo. 560, 228 P.2d 106 (1951), we held that the language of the statute intending the platting of a subdivision, and the sale of lots in accordance therewith, constituted a public dedication of the streets which are shown upon the plat. We also held that the platting and recording of a subdivision in accordance with the statutes resulted in the county or city acquiring fee title to all streets and ways set out therein.

> We modified the above holding in *Tissino v. Mavrakis*, supra, in two later cases that had to do with the power of municipalities to sell or transfer property formerly dedicated to the public through operation of the statute. In *Gay Johnson's Wyoming Automotive Service Co. v. City of Cheyenne*, Wyo., 367 P.2d 787 (1961) and *Payne v. City of Laramie*, Wyo., 398 P.2d 557 (1965), we held that the intent of the language of § 34–115, W.S.1957 (predecessor to § 34–12–104, W.S.1977) was not to vest the city or county with fee title to the land underlying a street or alley but rather the terms of the statute merely conveyed to the public authority a title in trust for the public's benefit. This position was reiterated in *Morad v. Brown*, Wyo., 549 P.2d 312 (1976).

> These cases at least stand for the proposition that the language of present § 34–12–104, W.S.1977, was intended to grant the public an interest in streets and ways set out on a properly platted and recorded subdivision map.

Paraphrased from a much earlier case, it was said that "[i]n the case in hand, [Lodore Avenue], the street in question, is shown to exist almost wholly in the contemplation of the mind." *Mayor of Brigantine v. Holland Trust*

Elliott, *Law of Roads and Streets* § 129 at 151 (4th ed. 1926). See 1 B. Elliott & W. Elliott, *supra*, § 168 at 195 which states that "[o]ne of the principal indications of acceptance [by the governmental instrumentality] is that of improving or repairing the road or street." *See also Koontz v. Town of Superior*, 746 P.2d 1264 (Wyo. 1987).

It is clear both by statute and our precedent that the dedication does not vest title in the Sheridan County Board of County Commissioners, *Ruby Drilling Co., Inc.*, 660 P.2d 377, nor makes the undeveloped platted street property of the county for liability and maintenance responsibility, including right of conveyance. *Payne v. City of Laramie*, 398 P.2d 557 (Wyo.1965). Dedication is the commitment for public use. *Town of Moorcroft v. Lang*, 761 P.2d 96 (1988), *reh'g granted* 779 P.2d 1180 (Wyo.1989). A right of use for that public purpose is created. *City of Evanston v. Robinson*, 702 P.2d 1283 (Wyo.1985). The Sheridan County Board of County Commissioners become the trustee for exercise of that public responsibility, *Payne*, 398 P.2d 557; *Ruby Drilling Co., Inc.*, 660 P.2d 377. Compare *Gregory v. Sanders*, 635 P.2d 795 (Wyo.1981), which exists as an anathema in contrarily addressing the effect of a plat dedication as cogently recognized in the special concurrence of Justice Rooney in

*Ruby Drilling Co., Inc.* See *Chapman v. Greenville Chamber of Commerce*, 127 S.C. 173, 120 S.E. 584 (1923), where the court determined that the right of control came to be vested in the city by legislative action. "The dedication was not to Greenville county, but to the public at large, though the land is situated in the county of Greenville and in the city of Greenville." *Id.* at 586.

Furthermore, unless the county undertakes to create a county road, platting without development does not impress that responsibility and authority including development, maintenance, snow removal as well as controlled use. County road case law and statutes as a separate subject are not involved here. *Sheridan County v. Spiro*, 697 P.2d 290 (Wyo.1985); *Board of County Com'rs, Carbon County v. White*, 547 P.2d 1195 (Wyo.1976); *Board of County Com'rs, Sheridan County v. Patrick*, 18 Wyo. 130, 104 P. 531 (1909), *reh'g denied* 18 Wyo. 130, 107 P. 748 (1910).[3]

The rights of Jack and Annabelle Moody to litigate with Keith Sare about the platted but undeveloped Lodore Avenue, which in present use constitutes an access cul-de-sac, is not questioned. I find no basis, however, for Sheridan County or its Board of County Commissioners to become in-

*Co.*, 35 A. 344, 346 (N.J.1896). The proper litigants here were the two subdivision property owners who contested personal rights of access provided by the plat dedication. *Tissino*, 228 P.2d 106.

3. The Board of County Commissioners have two distinct responsibilities for roadways situated outside of incorporated towns and not included in the Wyoming state highway system. In first responsibility is the construction, control and maintenance of county roads. W.S. 24–1–101. That responsibility for such roads as designated and established, W.S. 24–1–102(b), constitutes one of the principal operational responsibilities statutorily mandated as a duty of the Board of County Commissioners. W.S. 24–1–104, 24–1–105, and 24–1–111 within those duties are to be compared with the operational function for establishment, vacation and alteration of county highways, W.S. 24–3–101 through 24–3–127, with continued maintenance which is to be compared to the adjudicative responsibility to establish a private road but not to maintain it, W.S. 24–9–101 through 24–9–103.

Completely distinguishable from the foregoing county highway responsibilities of the Board of County Commissioners is the trustee responsibility as the responsible public agency when an area is subdivided and platted with streets and alleys dedicated to the public pursuant to W.S. 34–12–101 through 34–12–115. In this separate function, the Board of County Commissioners have a right, but not the inevitable responsibility to assume an obligation for construction, control and maintenance. When a public interest responsibility has not been assumed, private controversies about access are properly left to private litigants. Otherwise, the question is created about a public agency assuming a public authority and denying a concurrent public responsibility. This can include:
> [T]he duty of keeping the dedicated property open, in repair, and free from obstructions, nuisances, or unreasonable encroachments which destroy, in whole or in part, its use as a public thoroughfare, and it is liable for injuries caused by neglect to do so.

26 C.J.S. *Dedication* § 55 at 540 (1956) (footnotes omitted).

volved in the dispute until the Sheridan County Board of County Commissioners become willing at the minimum to develop and maintain the platted street not only for the two disputing neighbors, but as a county roadway for the public in general. Otherwise, every platted but undeveloped street and alley in every subdivision in Wyoming immediately becomes the responsibility of either the Board of County Commissioners, if rural, or the city or town, if within an incorporated area.

This significant increase in duty and financial exposure is neither justified by Wyoming statute nor precedent. I find that the rights to an undeveloped platted street are vested only in subdivision tract owners until developed for public use or until the governmental agency assumes responsibility by construction, operation, or maintenance for that purpose. Obviously, as stated in appellant's brief in this case, the Sheridan County Board of County Commissioners were only a stalking horse in filed complaint for the actual litigants, Jack and Annabelle Moody, to contest with Keith Sare. Stalking horse status does not necessarily create a real party in interest nor properly defines a statement of a litigable claim. It is clearly established that Sheridan County and its Board of County Commissioners are presently disinterested in the development of Lodore Avenue as a public roadway. They only, and in my opinion wrongly, litigate to secure adjudication of rights between two neighboring landowners. Dedication to the public should not create general responsibility in the public entity until responsibility for construction, maintenance and control *as a*

*public roadway* is undertaken. *City of Evanston,* 702 P.2d at 1286. This undeveloped street, until sometime hereafter to be appropriated for a public passage, is certainly not a county roadway. *George W. Condon Co. v. Board of County Com'rs, Natrona County,* 56 Wyo. 38, 103 P.2d 401 (1940). In practical operation at present or perhaps for topographical reasons for a long future time, this case presents only a cul-de-sac private access controversy between Sare and Moody. *Jultak,* 231 P.2d 974.[4]

Without assuming responsibility for the public usage, I perceive no real party in interest status for the Sheridan County Board of County Commissioners and conversely, where the agency does interject itself litigatively between adjoining tract owners in a largely undeveloped rural subdivision, responsibility for public access by maintenance and control could likely follow. Here, where the Sheridan County Board of County Commissioners only litigate a private interest, I find the public status for the exercise of their responsibility to be absent. Consequently, I dissent.

---

**4.** If the issue is to be more narrowly defined within the doctrine of standing, the rule then questions whether the litigant has a real interest in the action brought and in its outcome. *Campbell v. Wyoming Development Co.,* 55 Wyo. 347, 100 P.2d 124, *reh'g denied* 55 Wyo. 347, 102 P.2d 745 (1940). The Illinois court has recently defined standing as requiring " 'some injury in fact to a legally recognized interest.' " (*In re Estate of Burgeson* (1988), 125 Ill.2d 477, 486, 126 Ill.Dec. 954, 532 N.E.2d 825, quoting *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill.2d 243, 254, 91 Ill.Dec. 628, 483 N.E.2d 1263.) In deciding whether a party has stand-

ing, a court must look at the party to see if he or she will be benefitted by the relief granted. (See 59 Am.Jr.2d *Parties* § 30 (1987).) Standing is a component of justiciability, and therefore must be defined on a case-by-case basis. *Burgeson,* 125 Ill.2d at 485, 126 Ill.Dec. 954, 532 N.E.2d 825.

*In re Marriage of Rodriguez,* 131 Ill.2d 273, 137 Ill.Dec. 78, 545 N.E.2d 731, 734 (1989). "Standing to sue is jurisdictional and can be considered at any time in course of litigation." *Spratt v. Security Bank of Buffalo, Wyo.,* 654 P.2d 130 (Wyo.1982).